**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5036-16T4

KWOK FANG CHANG TRUST,

    Plaintiff-Appellant,

v.

ESTATE OF SYLVIA MALAKOFF,

    Defendant-Respondent.

_____

        Argued July 2, 2018 — Decided July 27, 2018

        Before Judges Carroll and Rose.

        On appeal from Superior Court of New Jersey,
        Law Division, Bergen County, Docket No. LT-
        3936-17.

        Christopher S. Martone argued the cause for
        appellant (Martone & Associates, LLC,
        attorneys; Christopher S. Martone, of counsel
        and on the briefs).

        Lawrence E. Sindoni argued the cause for
        respondent (Northeast New Jersey Legal
        Services Corp., attorneys; Lawrence E. Sindoni
        and Johanna S. Zacarias, of counsel and on the
        brief).

PER CURIAM

In this summary dispossess matter, plaintiff Kwok Fang Chang Trust appeals from a June 14, 2017 Special Civil Part judgment, effectively dismissing its complaint for possession of an apartment in Edgewater.[1]  On appeal, plaintiff contends that pursuant to the terms of the lease agreement, the death of the tenant, Sylvia Malakoff, constituted an "event[] of default[,]" permitting termination of the tenancy.  For the reasons that follow, we affirm.

I.

We glean the facts and procedural history from the trial record.  Trustee Alexander Chen testified on behalf of plaintiff, and Sylvia's[2] son, Jay, testified on behalf of defendant Estate of Sylvia Malakoff.  Documents were also introduced in evidence, including the lease agreement at issue, the notices concerning termination of the lease agreement, a series of checks for payment of rent and water bills, and a surrogate's affidavit.

---

[1]  The trial judge entered a "technical" judgment of possession in the amount of $2106, representing rent due, which plaintiff had not accepted while the action was pending.  Apparently, after judgment was entered, the rent was paid in full and the complaint was dismissed.

[2] We refer to the defendant parties by their first names to avoid any confusion caused by their common last name.  No disrespect is intended.

A-5036-16T4

Prior to her death, Sylvia had resided at the second floor apartment of XX Myrtle Avenue in Edgewater (premises), a three-unit rental property, for more than thirty years. On May 1, 2016, plaintiff[3] and Sylvia executed a one-year lease agreement, terminating on April 30, 2017. Her husband having died in April 2014, Sylvia was the sole tenant of the premises. Pertinent to this appeal, the lease agreement contained the following provisions:

> [Paragraph] 11. **Use of Property.** The Tenant may use the House only as a private residence for the following persons: **Jay Malakoff, her son, and Jay Malakoff's children or spouse,** referred to as "household members" . . . .
>
> [Paragraph] 13. **Events of Default.** The following are defaults under this Lease: . . . (c) the death of remaining Tenant, Sylvia Malakoff . . . .

At the time of Sylvia's death on January 3, 2017, Jay had resided at the premises for thirty-four years, and his son, Eitan, had lived there ten years. Jay testified he had "been paying the full rent since approximately 2009." Chen confirmed "Jay's name and his mother, Sylvia's, name [were] on the checks[s]." The oldest check introduced in evidence, dated August 27, 2013, was

---

[3] Although testimony adduced at trial indicated Kwok Fang Chang Trust executed the lease agreement, the document indicates it was executed by Kwok Fang Chang (Chang).

payable from a joint account held by Jay and Eitan; the most recent check, dated April 1, 2017, was payable from Eitan's account.

Jay and Eitan also paid the water bills. For example, by correspondence dated March 17, 2017, Chang requested payment due for the March 2017 water bill. The bill was addressed to "Tenant: Jay Malakoff" and stated, in pertinent part: "Payment is due on your March water bill . . . ." (Emphasis added).

It is unclear from the record the date on which plaintiff was made aware that Sylvia had died. On March 8, 2017, plaintiff's counsel sent defendant "C/O Jay Malakoff" a notice to quit and demand for possession, terminating the lease as of April 30, 2017. In particular, the notice to quit stated "the death of Sylvia Malakoff is a default under the lease." Jay and Eitan remained in possession of the premises at the time of trial.

Following the close of evidence at the June 14, 2017 trial, the judge issued a succinct oral opinion, finding paragraphs eleven and thirteen of the lease agreement were contradictory. While he agreed the lease terminated as a result of Sylvia's death, the judge found Jay and Eitan became "month-to-month tenants under Maglies [v. Estate of Guy, 193 N.J. 108 (2007)]." Citing the rent and water bill payments made by Jay, the judge found, "It's clear that the landlord has known about this arrangement, [and] has acquiesced in it." Further, "[T]he lease expired by its own terms.

4

[Jay] is a month-to-month tenant there." As such, the court ultimately determined Jay and Eitan are entitled to the protections of the New Jersey Anti-Eviction Act (Act), N.J.S.A. 2A:18-61.1 to -61.12, requiring good cause for eviction. On August 23, 2017, in an oral opinion, the trial judge supplemented his findings of facts and conclusions of law pursuant to Rule 2:5-1(b), further analogizing the Court's holding in Maglies to the circumstances of the present case. This appeal followed.

The sole issue raised on appeal is whether Jay and Eitan are legally entitled to remain in possession of the premises following Sylvia's death. Guided by Maglies, under the facts presented, we conclude Jay and Eitan were "functional tenants," and accordingly they were not subject to eviction upon Sylvia's death.

## II.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citations omitted). We "should not disturb the 'factual findings and legal conclusions of the trial judge unless [we are]

convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" and thus is subject to de novo review. Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008) (first alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Further, we review the trial court's interpretation of the Act, de novo.

The Act protects residential tenants from eviction absent a showing of good cause. Morristown Mem'l Hosp. v. Wokem Mortg. & Realty Co., 192 N.J. Super. 182, 186 (App. Div. 1983). N.J.S.A. 2A:18-61.1 enumerates the causes that are sufficient for eviction from residential premises. "When a person is protected by the Act, 'the effective term of the lease is for as long as the tenant wishes to remain, provided he pays the rent . . . and provided there is no other statutory cause for eviction under [the Act].'" Maglies, 193 N.J. at 121 (alteration and omission in original) (quoting Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 350

(App. Div. 1993)). Absent proof of one of the enumerated grounds for eviction, the court lacks jurisdiction to enter a judgment of possession. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 281 (1994).

Pertinent to this appeal, the Act provides:

> No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the Superior Court from any house . . . leased for residential purposes . . . except upon establishment of one of the following grounds as good cause:
>
> . . . .
>
> (e)(1) The person has continued, after written notice to cease, to substantially violate or breach any of the covenants or agreements contained in the lease for the premises where a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement, provided that such covenant or agreement is reasonable and was contained in the lease at the beginning of the lease term.
>
> [N.J.S.A. 2A:18-61.1].

Here, plaintiff served defendant with a notice to quit, effective April 30, 2017, citing Sylvia's death as "a default under the lease" resulting in its termination. As the trial court observed, the termination date provided in the notice to quit was the same date as the expiration of the one-year lease term. Nevertheless, the judge determined that Jay and Eitan are entitled to the protections of the Act. Without regard to the label

7

utilized to describe their status in the lease agreement, we agree that pursuant to the facts found by the trial judge, Jay and Eitan meet the three-part test enunciated in Maglies. 193 N.J. at 122.

In Maglies, the Court addressed "whether household members listed on a lease and [Housing Assistance Payment (HAP)] contract would be included in the broad group of" persons protected by the Act. 193 N.J. at 122 (citing N.J.S.A. 2A:18-61.1). In response to the landlord's characterization of the defendant as an "occupant," the Court stated "[a] label imposed by the landlord cannot and should not control [judicial] analysis of the law." Ibid. Rather, our courts "long have recognized the need to look beyond labels in order to explore the true character of a transaction or relationship." Ibid. Accordingly, the Court determined that a family member occupant, "functional co-tenant," or "tenant[]-in-fact," may be protected by the Act, where the following factors are demonstrated: (1) continuous residency in the premises; (2) substantial contribution to the tenancy's financial obligations; and (3) the "contribution has been acknowledged and acquiesced to by [the] landlord." (Maglies test). Id. at 122-23, 126.

Here, as the trial court aptly observed, (1) Jay resided continuously at the premises for more than thirty years; (2) having paid the full amount of rent since 2009, he substantially

contributed to the tenancy's financial obligation; and (3) correspondence from Chang and the testimony of Chen clearly established the landlord "acknowledged and acquiesced" in Jay's contribution to the tenancy. Thus, we agree that Jay was the "functional equivalent of a co-tenant" in the household he shared with Sylvia, thus satisfying the Maglies test. Id. at 128. The same determination applies to Eitan, who resided at the premises for ten years and paid rent and water bills from his own account.

We are not persuaded by plaintiff's reliance on the Maglies Court's declaration that its holding was "not intended to undermine the enforceability of . . . clauses[,]" providing "the lease will terminate upon the named tenant's death." Id. at 127; see also Riverview Realty, Inc. v. Williamson, 284 N.J. Super. 566, 568 (App. Div. 1995). In Riverview Realty, we affirmed the trial court's decision "that the defendant sign a lease containing the termination upon death clause, but we [held] that her signing is without prejudice to a determination at the time of her death of the legal effect, if any, of that clause." 284 N.J. Super. at 570. Thus, "we left 'for another day, the question of the scope of our Anti-Eviction Act vis-a-vis occupant family members of deceased tenants.'" Ibid. (quoting Ctr. Ave. Realty, 264 N.J. Super at 353). In doing so, we reasoned:

> the answer to the question can best be determined in the light of the circumstances that exist at the time of the defendant's death. At that time, the equities can be examined in the light of the beneficial purposes of the Anti-Eviction Act and a fair determination reached as to whether the remedial purposes of the Act would be violated by enforcing such a clause.
>
> [Ibid.]

Nor are we persuaded by plaintiff's newly-minted argument that Maglies is inapplicable in the context of a non-Section 8 tenancy. The factual context of Maglies necessitated the Court's discussion of the implications of the subsidies provided under Section 8. However, the Court did not state directly or indirectly that the Maglies test applied exclusively to Section 8 recipients. Rather, the Court explored the intent and purpose of the Act, i.e., "to protect residential tenants against unfair and arbitrary evictions by limiting the bases for their removal." Maglies, 193 N.J. at 121 (citation omitted). Indeed, in concluding that functional co-tenants are protected by the Act, the Court stressed that the Act is remedial legislation and, as such, should be liberally construed. Id. at 123 (citing 447 Assocs. v. Miranda, 115 N.J. 522, 529 (1989)); see also Franklin Tower One v. N.M., 157 N.J. 602, 614 (1999) (recognizing New Jersey has a "strong public policy of protecting tenants from unjustified evictions"). Indeed, the Act was created to eliminate a landlord's ability to

arbitrarily oust residential tenants "from housing quarters in which they have been comfortable and where they have not caused any problems." Id. at 124 (citation omitted).

Based on our de novo review of the legal issue presented, we discern no error in the trial court's conclusion that Jay and Eitan were functional co-tenants of the premises. Accordingly, they were permitted to remain in the premises on a month-to-month basis upon Sylvia's death, absent good cause to evict them pursuant to the Act. In light of this determination, we need not reach plaintiff's remaining claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION